# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### MONROE DIVISION

| | |
|---|---|
| **ROBERT F KENNEDY JR ET AL** | **CASE NO.  3:23-CV-00381** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **JOSEPH R BIDEN JR ET AL** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## MEMORANDUM RULING

Pending before the Court is a Motion for Preliminary Injunction [Doc. No. 6] filed by Petitioners Robert F. Kennedy, Jr. ("Kennedy"), Children's Health Defense ("CHD"), and Connie Sampognaro ("Sampognaro") (collectively "Kennedy Plaintiffs"). An Opposition [Doc. No. 17] was filed by Defendants.[1] A Reply [Doc. No. 20] was filed by Kennedy Plaintiffs.

## I.      INTRODUCTION

This proceeding was consolidated[2] with the case of *Missouri v. Biden*[3] on July 24, 2023. The *Missouri v. Biden* case is now pending before the Supreme Court of the United States with a petition for writ of certiorari having been granted on October 20, 2023.[4]

Initially, when granting the Motion to Consolidate this case with *Missouri v. Biden*, this Court stated:

---

[1] Defendants consist of Joseph R. Biden, Jr., Karine Jean-Pierre, Vivek H. Murthy, Xavier Becerra, Dept. of Health & Human Services, Anthony Fauci, National Institute of Allergy & Infectious Diseases, Centers for Disease Control & Prevention, Carol Y. Crawford, Untied States Census Bureau, Jennifer Shopkorn, U.S. Department of Commerce, Alejandro Mayorkas, Robert Silvers, Samantha Vinograd, Department of Homeland Security, Jen Easterly, Cybersecurity & Infrastructure Security Agency, Gina McCarthy, Nina Jankowicz, Andrew Slavitt, Rob Flaherty, Courtney Rowe, Clarke Humphrey, Benjamin Wakana, Dana Remus, Aisha Shah, Laura Rosenberger, Mina Hsiang, U.S. Department of Justice, Federal Bureau of Investigation, Laura Dehmlow, Elvis M.. Chan, Jay Dempsey, Eric Waldo, Yolanda Byrd, Christy Choi. Tericka Lambert, Joshua Peck, Janell Muhammad, Matthew Masterson, Lauren Protentis, Geoffery Hale, Allison Snell, Brian Scully, Zachary Henry Schwartz, Lorena Molina-Irizarry, Kristin Galemore, U.S. Food and Drug Administration, Erica Jefferson, Michael Murray, Brad Kimberly, U.S. Department of State, Samaruddin K. Stewart, Daniel Kimmage, Alexis Frisbie, U.S. Department of Treasury, Mark A. Robbins, Kristen Muthig, Global Engagement Center, and the U.S. Election Assistance Commission.
[2] [Doc. No. 27], 2023 WL 4721172 (W.D. La., July 24, 2023)
[3] 3:22-cv-1213
[4] 144 S.Ct. 7 (2023)

> This Court will not rule on the preliminary injunction in *Kennedy v. Biden* until a ruling by the Fifth Circuit and/or the Supreme Court of the United States on the preliminary injunction in *Missouri v. Biden*; that will keep the consolidation from complicating the matter on appeal and will likely result in a more streamlined resolution of the preliminary injunction in *Kennedy v. Biden*.[5]

After the Supreme Court of the United States granted a writ of certiorari on October 20, 2023, Kennedy Plaintiffs filed a Motion to Intervene[6] in the *Missouri v. Biden*[7] case pending before the Supreme Court. The Supreme Court denied the Kennedy Plaintiffs' Motion to Intervene on December 11, 2023.[8] A dissenting opinion by Justice Alito[9] pointed out that, due to the Kennedy Plaintiffs' Motion for Preliminary Injunction being "stuck" in the District Court, denying the intervention would likely prevent Kennedy from vindicating his claims until June 2024 or later.[10]

After the denial of the Kennedy Plaintiffs' Motion for Intervention, this Court entered a Minute Entry ordering that the parties brief whether consolidation of this case with a case pending at the Supreme Court of the United States interfered with this Court's ability to rule on the pending Motion for Preliminary Injunction. Both Defendants[11] and the Kennedy Plaintiffs[12] responded.

Accordingly, the Court will first determine whether it can rule on the Kennedy Plaintiffs' Motion for Preliminary Injunction and will then consider whether the Motion should be granted.

## II.    FACTUAL BACKGROUND

The Kennedy Plaintiffs' Motion for Preliminary Injunction submits the same evidence previously introduced in *Missouri v. Biden*.[13] The evidence in the *Missouri v. Biden* case has been

---

[5] 2023 WL 4721172 (W.D. La., July 24, 2023)
[6] [Need Doc. No. ]
[7] Entitled *Murthy v. Missouri*
[8] 144 U.S. 32
[9] Id.
[10] Kennedy is a candidate for President of the United States.
[11] [Doc. No. 29]
[12] [Doc. No. 30]
[13] [Doc. No. 6, p. 1]

extensively addressed and discussed in this Court's prior ruling.[14] Therefore, because the Kennedy Plaintiffs rely on the same evidence, the Court will reference its previous ruling in this section and anywhere else deemed appropriate.

The same individuals and agencies were named as Defendants in both *Kennedy v. Biden* and *Missouri v.  Biden*. The Preliminary Injunction in *Missouri v. Biden* only referenced some groups of those Defendants: the White House Defendants,[15] the Surgeon General Defendants,[16] the CDC Defendants,[17] the NIAID Defendants,[18] the FBI Defendants,[19] the CISA Defendants,[20] and the State Department Defendants.[21] There were other Defendants against which a Preliminary Injunction was not sought.

The Kennedy Plaintiffs likewise seek a Preliminary Injunction against the White House Defendants, the Surgeon General Defendants, the CDC Defendants, the NIAID Defendants, the FBI Defendants, the CISA Defendants, and the State Department Defendants. In their Complaint,[22] the Kennedy Plaintiffs allege the Defendants violated the Free Speech Clause of the First Amendment to the United States Constitution by (1) systematically and repeatedly using

---

[14] 2023 WL 4335270 at 4-40 (W.D. La, July 4, 2023).

[15] White House Defendants consists of President Joseph R. Biden ("President Biden"), White House Press Secretary Karine Jean-Pierre ("Jean-Pierre"), Ashley Morse ("Morse"), Deputy Assistant to the President and Director of Digital Strategy Rob Flaherty ("Flaherty"), Dori Salcido ("Salcido"), Aisha Shah ("Shah"), Sarah Beran ("Beran"), Stuart F. Delery ("Delery"), Mina Hsiang ("Hsiang"), and Dr. Hugh Auchincloss (Dr. Auchincloss").

[16] Surgeon General Defendants consists of Dr. Vivek H. Murthy ("Murthy") and Katharine Dealy ("Dealy").

[17] The CDC Defendants consist of the Centers for Disease Control & Prevention, Carol Crawford ("Crawford"), Jay Dempsey ("Dempsey"), Kate Galatas ("Galatas"), United States Census Bureau ("Census Bureau"), Jennifer Shopkorn ("Shopkorn"), the Department of Health and Human Services ("HHS"), Xavier Becerra ("Becerra"), Yolanda Byrd ("Byrd"), Christy Choi ("Choi"), Ashley Morse ("Morse"), and Joshua Peck ("Peck").

[18] The NIAD Defendants consist of the National Institute of Allergy and Infectious Disease and Dr. Hugh Auchincloss ("Dr. Auchincloss").

[19] The FBI Defendants include Elvis Chan ("Chan"), the Federal Bureau of Investigation ("FBI"), Lauren Dehmlow ("Dehmlow"), and the U.S. Department of Justice ("DOJ").

[20] The CISA Defendants consist of the Cybersecurity and Infrastructure Security Agency ("CISA"), Jen Easterly ("Easterly"), Kim Wyman ("Wyman"), Lauren Protentis ("Protentis"), Geoffrey Hale ("Hale"), Allison Snell ("Snell"), Brian Scully ("Scully"), the Department of Homeland Security ("DHS"), Alejandro Mayorkas ("Mayorkas"), Robert Silvers ("Silvers"), and Samantha Vinograd ("Vinograd").

[21] The State Department Defendants consist of the United States Department of State, Leah Bray ("Bray"), Daniel Kimmage ("Kimmage'), and Alex Frisbie ("Frisbie").

[22] [Doc. No. 1, ¶ 450-51]

3

destructive, coercive threats to force social-media companies to censor protected speech and/or (2) entering into collusive partnerships with social-media companies and working jointly with those companies to censor protected speech.

The Complaint alleges this conduct harmed Kennedy by directly censoring him on social media, deplatforming him entirely from major social-media platforms, and preventing him from gathering news to pass on to his hundreds of thousands of social-media followers.[23] The CHD alleges it was directly censored and likewise suffered from the inability to gather news to pass on to its members. The CHD further claims its many members were deprived of information and ideas regarding the safety and efficacy of alternative COVID-19 treatments, among other things.[24] Sampognaro alleges the Government's censorship campaign harmed her as a citizen and health care policy advocate by depriving her of COVID-19-related and other information. Sampognaro further alleges she needs complete, accurate information about COVID-19 and possible treatments and has been unable to obtain this information due to the Defendants' actions.[25]

The Kennedy Plaintiffs' Complaint further moves the Court to certify this case as a class action pursuant to FED. R. CIV P. 23(b)(2) for "all persons in the United States who have consumed news related to COVID-19 or U.S. Elections on Facebook, Twitter, or YouTube at any time from January 2020 to the present."[26]

This Court previously granted the Petition for Preliminary Injunction in *Missouri v. Biden* on July 4, 2023,[27] as to the White House Defendants, the Surgeon General Defendants, the CDC Defendants, the NIAID Defendants, the FBI Defendants, the CISA Defendants, and the State

---

[23] [Doc. No. 1, ¶ 434]
[24] [Doc. No. 1, ¶¶ 436-37]
[25] [Doc. No. 1, ¶¶ 438-39]
[26] [Doc. No. 1, ¶¶ 400-409]
[27] 2023 WL 4335270 (W.D. La., July 4, 2023)

Department Defendants. On October 3, 2023, [28] the United States Court of Appeals for the Fifth Circuit affirmed the District Court Ruling with respect to the White House Defendants, the Surgeon General Defendants, the CDC Defendants, the FBI Defendants, and the CISA Defendants. The Fifth Circuit reversed the District Court Ruling with respect to the NIAID Defendants and the State Department Defendants. The Preliminary Injunction was modified with respect to the White House Defendants, Surgeon General Defendants, the CDC Defendants, the FBI Defendants, and the CISA Defendants as follows:

> Defendants, and their employees and agents, shall take no actions, formal or informal, directly or indirectly, to coerce or significantly encourage social-media companies to remove, delete, suppress, or reduce, including through altering their algorithms, posted social-media content containing protected free speech. That includes, but is not limited to, compelling the platforms to act, such as by intimating that some form of punishment will follow a failure to comply with any request, or supervising, directing, or otherwise meaningfully controlling the social-media companies' decision-making process.

83 F.4th 350, 397 (5th Cir. 2023). The Fifth Circuit ruling was stayed for ten days.

Thereafter, on October 20, 2023,[29] the Supreme Court of the United States, granted a writ of certiorari and an application for stay, which stayed the preliminary injunction until the Supreme Court "sends down a judgment." Therefore, the preliminary injunction in *Missouri v. Biden* is presently stayed until the Supreme Court issues its ruling.

Both the Kennedy Plaintiffs and the Defendants filed additional briefing on whether this Court should issue a ruling on the pending Preliminary Injunction. The Court will first determine whether it can rule on the Kennedy Plaintiffs' Motion for Preliminary Injunction.

---

[28] 83 F.4th 350 (5th Cir. 2023)
[29] 144 S.Ct. 7 (2023)

### III.   WHETHER THE COURT CAN ISSUE A RULING ON THE PENDING MOTION FOR PRELIMINARY INJUNCTION AT THIS TIME

The Defendants concede that the pendency of *Missouri v. Biden* in the Supreme Court does not deprive this Court of jurisdiction to rule on the Preliminary Injunction in *Kennedy v. Biden*. However, Defendants argue this Court should not decide the preliminary injunction in *Kennedy v. Biden* because: (1) a resolution by the Supreme Court in *Missouri v. Biden* will resolve the issues in *Kennedy v. Biden*; (2) the granting of a stay by the Supreme Court means the Defendants have made a strong showing that *Missouri v. Biden* is erroneous; and (3) it would be judicially efficient for this Court to hold the Motion for Preliminary Injunction in abeyance because briefs have already been filed and oral arguments set in *Missouri v. Biden* before the Supreme Court, and there is no practical way *Kennedy v. Biden* to be taken up in *Missouri v. Biden* without resulting in duplicate briefing and judicial determination.

The Kennedy Plaintiffs argue that this Court continues to have jurisdiction over the *Kennedy v. Biden* Motion for Preliminary Injunction despite *Missouri v. Biden* pending before the Supreme Court.[30] The Kennedy Plaintiffs assert that this Court should rule on their Motion for Preliminary Injunction now because: (1) the Supreme Court's stay in *Missouri v. Biden* does not imply a ruling in Defendants' favor; (2) the *Kennedy v. Biden* case is different than *Missouri v. Biden* because the Kennedy Plaintiffs have superior standing, asked for a different, more narrowly-tailored injunction, offered additional First Amendment arguments under which the Defendants' conduct is alleged to be unconstitutional, and Defendants singled out Kennedy, a candidate for President of the United States, for censorship; and (3) delaying ruling would delay Kennedy from vindicating his claims.

---

[30] *Hall v. Hall*, 138 S.Ct. 1118 (2018)

After reviewing the briefing, this Court finds that it can decide the Kennedy Plaintiffs' Motion for Preliminary Injunction. The most important consideration is the Kennedy Plaintiffs' ability to vindicate their rights. In the *Missouri v. Biden* ruling, this Court found that a violation of the Plaintiffs' First Amendment free speech right caused irreparable injury.[31] Because the denial of First Amendment rights is an irreparable injury, a ruling is required now. The Kennedy Plaintiffs also have different First Amendment arguments than those made in *Missouri v. Biden* and have a different standing argument. A ruling on this case now is unlikely to have any effect on the pending *Missouri v. Biden* Supreme Court case because that case has already been briefed and scheduled for oral argument. This Court further finds it unlikely that the stay issued by the Supreme Court in *Missouri v. Biden* implies how the Supreme Court will rule.

In accordance with this, the Court will now consider the Kennedy Plaintiffs' Motion for Preliminary Injunction.

## IV.   LAW AND ANALYSIS

Defendants maintain the Kennedy Plaintiffs lack standing and cannot meet the requirements for a preliminary injunction. The Court shall address each in turn.

### A.  Standing

Article III of the United States Constitution limits federal courts' jurisdiction to "cases" and "controversies." *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005) (*citing* U.S. Const. art. III, § 2). The "law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 435 (2017) (citation omitted). Thus, "the standing question is whether the plaintiff has alleged such a personal stake in the

---

[31] [2023 WL 4335270 at 66-67]

outcome of the controversy as to warrant [its] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975) (citation and internal quotation marks omitted). The Article III standing requirements apply to claims for injunctive and declaratory relief. *See Seals v. McBee*, 898 F.3d 587, 591 (5th Cir. 2018), *as revised* (Aug. 9, 2018); *Lawson v. Callahan*, 111 F.3d 403, 405 (5th Cir. 1997).

Article III standing is comprised of three essential elements. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016) (citation omitted). "The plaintiff must have (1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* (internal citations omitted). Furthermore, "[a] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester, N.Y.*, 581 U.S. at 439 (citations omitted). The presence of one party with standing "is sufficient to satisfy Article III's case-or-controversy requirement." *Texas*, 809 F.3d 134 (citing *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 52 n.2 (2006)).

In the context of a preliminary injunction, it has been established that "the 'merits' required for the plaintiff to demonstrate a likelihood of success include not only substantive theories but also the establishment of jurisdiction." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015). To establish standing, the plaintiff must demonstrate that they have encountered or suffered an injury attributable to the defendant's challenged conduct and that such injury is likely to be resolved through a favorable decision. *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560–61 (1992). Further, during the preliminary injunction stage, the movant is only required to

demonstrate a likelihood of proving standing. *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020).

Defendants raise challenges to each essential element of standing for Kennedy Plaintiffs. Each argument will be addressed in turn below. For the reasons stated herein, the Court finds that the Kennedy Plaintiffs have demonstrated a likelihood of satisfying Article III's standing requirements.

### i. Injury-in-fact

Plaintiffs seeking to establish injury-in-fact must show they suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo*, 578 U.S. at 339 (citations and internal quotation marks omitted). For an injury to be "particularized," it must "affect the plaintiff in a personal and individual way." *Id.* (citations and internal quotation marks omitted). The presence of any one plaintiff with standing to pursue injunctive relief as to the Plaintiff's First Amendment claim satisfies Article III's case-or-controversy requirement. *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 52 n.2 (2006).

Kennedy Plaintiffs assert an "injury-in-fact" based on their censorship and/or violations of their First Amendment right to speak and listen freely without government interference. In response, Defendants contend that Kennedy Plaintiffs' allegations rest on long-past conduct, making Kennedy Plaintiffs' fears of imminent injury entirely speculative. For the reasons explained below, the Kennedy Plaintiffs are likely to prove an injury-in-fact.

CHD and Kennedy can demonstrate standing. On January 23, 2021, three days after President Biden took office, White House Digital Director Clarke Humphrey emailed Twitter to

request the remand of an anti-COVID-19 vaccine tweet by Kennedy.[32] Additionally, Defendants labeled Kennedy as one of the "Disinformation Dozen," and had Facebook suppress a CHD post, despite it not violating Facebook policies.[33] On May 6, 2021, Rob Flaherty, White House Deputy Assistant to the President, emailed Facebook and chastised them for failure to censor posts made by the "Disinformation Dozen."[34] Shortly after June 20, 2021, all twelve members of the "Disinformation Dozen", including Kennedy, were censored, and pages, groups and accounts linked to them were removed.[35] Additionally, The Surgeon General's office received a presentation from the Center for Countering Digital Hate that the "Disinformation Dozen" were primarily responsible for a significant amount of online misinformation.[36] The Center For Countering Digital Hate recommended that social-media platforms change algorithms in an effort to avoid amplifying "misinformation super-spreader" posts.[37] The Surgeon General's office thereafter ensured Facebook was censoring the "Disinformation Dozen."[38]

The CDC worked with The Virality Project to have social-media platforms delete and/or reduce social-media posts by persons and organizations they believed were spreading misinformation regarding COVID-19. The Virality Project's "Memes, Magnets and Microchips" report[39] listed both Kennedy and CHD as spreaders of COVID medical misinformation a total of sixteen times. The Virality Project further listed Kennedy and the CHD in fifth and second place as the highest performing weekly social-media engagement incidents.

---

[32] *Missouri v. Biden* 2023 WL 4335270 at 5 (W.D. La. July 4, 2023).
[33] Id. at 9
[34] Id. at 11
[35] Id. at 12
[36] Id. at 14
[37] Id. at 16
[38] Id. at 17
[39] [Doc. No. 209-3, 3:22-cv-01213]

Sampognaro submitted no direct evidence of content suppression. However, she alleges she is a citizen and health care policy advocate who was deprived of complete, accurate COVID-19 information. This Court has the benefit of the Fifth Circuit Court of Appeal's ruling in *Missouri v. Biden,*[40] which recognized Missouri's and Louisiana's standing due to the "right to listen" and gain information from their citizens on social media. Sampognaro has such standing here.

Both this Court and the United States Court of Appeals for the Fifth Circuit found the White House Defendants, Surgeon General Defendants, the CDC Defendants, the FBI Defendants and the CISA Defendants coerced and/or significantly encouraged social-media platforms to suppress disinformation content. Kennedy, CHD and Sampognaro alleged injuries relating to that conduct, and those injuries satisfy this requirement of Article III.

### ii.  Traceability

To establish traceability, or "causation" in this context, a plaintiff must demonstrate a "direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992). Therefore, courts examining this element of standing must assess the remoteness, if any, between the plaintiff's injury and the defendant's actions. As explained in *Ass'n of Am. Physicians & Surgeons v. Schiff*, the plaintiff must establish that it is "'substantially probable that the challenged acts of the defendant, not of some absent third party' caused or will cause the injury alleged." 518 F. Supp. 3d 505, 513 (D.D.C. 2021), *aff'd sub nom. Ass'n of Am. Physicians & Surgeons, Inc. v. Schiff*, 23 F.4th 1028 (D.C. Cir. 2022) ("*AAPS II*") (quoting *Fla. Audubon Soc. v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996)).

Defendants argue that traceability is lacking because the censorship resulted from the independent decisions of social-media companies. However, both this Court and the Fifth Circuit

---

[40] 83 F.4th 350, 372 (5th Cir. 2023).

found the social-media platforms' censorship decisions were likely censored, at least in part, due to the coercion and/or significant encouragement of the White House Defendants, the Surgeon General Defendants, the CDC Defendants, the FBI Defendants, and the CISA Defendants. Additionally, social-media postings by both Kennedy and the CHD were directly censored.

Therefore, the Kennedy Plaintiffs have established traceability.

### iii.  Redressability

The redressability element of the standing analysis requires that the alleged injury is "likely to be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61. "To determine whether an injury is redressable, a court will consider the relationship between 'the judicial relief requested' and the 'injury' suffered." *California v. Texas*, 141 S. Ct. 2104, 2115, 210 L. Ed. 2d 230 (2021) (quoting *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984), *abrogated by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)). Additionally, courts typically find that where an injury is traceable to a defendant's conduct, it is usually redressable as well. *See, e.g.*, *Scenic Am., Inc. v. United States Dep't of Transportation*, 836 F.3d 42, 54 (D.C. Cir. 2016) ("[C]ausation and redressability are closely related, and can be viewed as two facets of a single requirement."); *Toll Bros. v. Twp. of Readington*, 555 F.3d 131, 142 (3d Cir. 2009) ("Redressability . . . is closely related to traceability, and the two prongs often overlap."); *El Paso Cnty. v. Trump*, 408 F. Supp. 3d 840, 852 (W.D. Tex. 2019).

All of the Kennedy Plaintiffs claims will likely be redressed by a favorable decision. Kennedy Plaintiffs argue the Defendants should be restrained from unlawfully interfering with the social-media companies' independent application of their content-moderation policies. An injunction granting this relief will protect the Kennedy Plaintiffs from sustaining further censorship and violations of their First Amendment rights. Therefore, the Kennedy Plaintiffs have established redressability.

12

All the requirements for Article III standing appear to be met. Accordingly, this Court concludes Kennedy, CHD, and Sampognaro likely have Article III standing.

### B.  Preliminary Injunction

An injunction is an extraordinary remedy never awarded of right. *Benisek v. Lamone,* 138 U.S. 1942, 1943 (2018). In each case, the courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief. *Winter v. Natural Res. Def. Council, Inc.* 555 U.S. 7, 24 (2008).

The standard for an injunction requires a movant to show: (1) the substantial likelihood of success on the merits; (2) that he is likely to suffer irreparable injury in the absence of an injunction; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. The party seeking relief must satisfy a cumulative burden of proving each of the four elements enumerated before an injunction can be granted. *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987). None of the four prerequisites has a quantitative value. *State of Texas v. Seatrain Int'l.*, S.A., 518 F.2d 175, 180 (5th Cir. 1975).

The Kennedy Plaintiffs assert that all the requirements for a preliminary injunction are satisfied here. Specifically, they argue their free speech claims are likely to succeed on the merits, even if no coercion, significant encouragement, or joint participation is found. Additionally, the Kennedy Plaintiffs assert that the remaining requirements are met because the infringement of their First Amendment freedoms constituted an irreparable injury, the balance of equities tips in their favor because it will not impinge on legitimate governmental interests, and the protection of First Amendment freedoms is in the public interest.

The Kennedy Plaintiffs argued additional grounds for a preliminary injunction that were also argued in *Missouri v. Biden*. The Kennedy Plaintiffs believe they are entitled to a Preliminary

13

Injunction against Defendants because of the direct censorship of Kennedy and CHD. Kennedy, CHD, and Sampognaro further allege they are entitled to a Preliminary Injunction because Defendants' censorship campaign deprived them of the ability to gather news to pass on to their social-media followers. Finally, the Kennedy Plaintiffs assert that the Defendants caused this suppression through coercion, significant encouragement, and joint participation. Kennedy Plaintiffs also argue that significant encouragement, coercion and/or joint participation are not required when the government induces, encourages, or promotes private persons to accomplish what the government is constitutionally forbidden to accomplish.[41] *Norwood v. Harrison*, 413 U.S. 455, 465 (1973).

Kennedy Plaintiffs also argue that coercion, significant encouragement, and/or joint participation are also not required when the government's censorship campaign is "overtly viewpoint discriminatory"[42] *Iancu v. Brunetti*, 139 U.S. 2294, 2299 (2019). Further, no coercion, significant encouragement and/or joint participation is necessary when the government has communicated to social media companies regarding the government's "strong preference" for those companies to censor speech disfavored by the government.[43] *Skinner v. Ry. Lab Executives' Ass'n.*, 489 U.S. 602, (1989).

### i. Likelihood of Success on the Merits

To determine whether Kennedy Plaintiffs are substantially likely to succeed on the merits for this preliminary injunction, they must demonstrate that (1) the Defendants exercised coercive power or such significant encouragement that the private parties' choice must be deemed the government's choice and (2) Defendants jointly participated in the actions of social-media

---

[41] Referred to herein as the "Norwood theory."
[42] Referred to herein as the "viewpoint discrimination theory."
[43] Referred to herein as the "strong preference theory."

companies so as to blur the line between public and private action. The Court shall address each in turn.

### 1.  Coercion and/or Significant Encouragement

The Court finds that the Kennedy Plaintiffs are likely to succeed on the merits of their claim that some of the Defendants exercised coercive power or provided significant encouragement, which suppressed Plaintiffs' speech.

The State (i.e., the Government) can be held responsible for a private decision only when it has exercised coercive power or has provided such "significant encouragement," either overtly or covertly, that the choice must be deemed to be that of the State. Mere approval or acquiescence in the actions of a private party is not sufficient to hold the state responsible for those actions. *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); *Rendell-Baker v. Kohn*, 457 U.S. 830, 1004–05 (1982); *National Broadcasting Co. Inc v. Communications Workers of America*, *Afl-Cio*, 860 F.2d 1022 (11th Cir. 1988); *Focus on the Family v. Pinellas Suncoast Transit Authority*, 344 F.3d 1213 (11th Cir. 2003); *Brown v. Millard County*, 47 Fed. Appx. 882 (10th Cir. 2002).

In evaluating "significant encouragement," a state may not induce, encourage, or promote private persons to accomplish what it is constitutionally forbidden to accomplish. *Norwood v. Harrison*, 413 U.S. at 465.  Additionally, when the government has so involved itself in the private party's conduct, it cannot claim the conduct occurred as a result of private choice, even if the private party would have acted independently.  *Peterson v. City of Greenville*, 373 U.S. 244, 247-48 (1963). Further, oral or written statements made by public officials could give rise to a valid First Amendment claim where the comments of a governmental official can reasonably be interpreted as intimating that some form of punishment or adverse regulatory action will follow the failure to accede to the official's request. *National Rifle Association of America* v. *Cuomo*, 350

F.Supp. 3d 94, 114 (D.C. NY, Nov. 6, 2018). Additionally, a public official's threat to stifle protected speech is actionable under the First Amendment and can be enjoined, even if the threat turns out to be empty. *Backpage.com, LLC v. Dart*, 807 F. 3d 229, 230-31 (7ᵗʰ Cir. 2015).

To determine whether Kennedy Plaintiffs are substantially likely to succeed on the merits of their First Amendment free speech claim, Kennedy Plaintiffs must prove that the Defendants either exercised coercive power or exercised such significant encouragement that the private parties' choice must be deemed to be that of the government. Additionally, Kennedy Plaintiffs must prove the speech suppressed was "protected speech." The Kennedy Plaintiffs are likely to succeed on the merits. As exhaustively discussed in this Court's *Missouri v. Biden* ruling[44] and in the Fifth Circuit ruling,[45] the White House Defendants, the Surgeon General Defendants, the CDC Defendants, the FBI Defendants, and the CISA Defendants coerced and/or significantly encouraged social-media platforms to suppress content posted on social-media sites in violation of the Free Speech Clause of the First Amendment.

Kennedy Plaintiffs rely on the same evidence presented in *Missouri v. Biden*. This Court again finds the White House Defendants, the Surgeon General Defendants, the CDC Defendants, the FBI Defendants and the CISA Defendants likely violated the Free Speech Clause of the First Amendment. As in *Missouri v. Biden*, the White House Defendants and the Surgeon General Defendants both coerced and significantly encouraged social-media platforms to suppress protected free speech. This Court further finds the CDC Defendants, the CISA Defendants and the FBI Defendants significantly encouraged social-media platforms to suppress protected free speech.

---

[44] 2023 WL 4335270 (W.D. La., July 4, 2023).
[45] 83 F.4th 350 (5th Cir. 2023).

This Court does not find the Kennedy Plaintiffs are likely to succeed on the merits of their claims under the "Norwood theory", the "viewpoint discrimination theory", and the "strong preference" theory. This Court agrees with the Defendants that none of these theories have been recognized as "stand alone" theories to prove liability of government conduct affecting private conduct without "coercion," "significant encouragement," or "joint participation."

### 2.   Joint Participation or Activity

This Court further finds that the Kennedy Plaintiffs are likely to succeed on the merits of their claims that the White House Defendants, the Surgeon General Defendants, the CDC Defendants, the FBI Defendants, and the CISA Defendants jointly participated with social-media platforms to suppress protected free speech.

The Kennedy Plaintiffs contend that the Defendants are not only accountable for private conduct that they coerced or significantly encouraged but also for private conduct in which they actively participated as "joint participants." *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 725 (1961). Most often "joint participation" occurs through a conspiracy or collusive behavior. *Hobbs v. Hawkins*, 968 F.2d 471, 480 (5th Cir. 1992). Even without a conspiracy, when a plaintiff establishes the government is responsible for private action arising out of "pervasive entwinement of public institutions and public officials in the private entity's composition and workings", joint participation is present. *Brentwood Academy. v. Tennessee Secondary Sch. Athletic Ass'n.*, 531 U. S. 288, 298 (2001).

Under the "joint action" test, the Government must have played an indispensable role in the mechanism leading to the disputed action. *Frazier v. Bd. Of Trs. Of N.W. Miss. Reg.'l Med. Ctr.*, 765 F.2d 1278, 1287-88 (5th Cir. 1985), *amended*, 777 F.2d 329 (5th Cir. 1985). When a plaintiff establishes "the existence of a conspiracy involving state action," the government becomes responsible for all constitutional violations committed in furtherance of the conspiracy

by a party to the conspiracy. *Armstrong v. Ashley*, 60 F.4th 262, (5th Cir. 2023). Conspiracy can be charged as the legal mechanism through which to impose liability on each and all of the defendants without regard to the person doing the particular act that deprives the plaintiff of federal rights. *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990).

Much like conspiracy and collusion, joint activity occurs whenever the government has "so far insinuated itself" into private affairs as to blur the line between public and private action. *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 357 (1974). To become "pervasively entwined" in a private entity's workings, the government need only "significantly involve itself in the private entity's actions and decision-making"; it is not necessary to establish that "state actors … literally 'overrode' the private entity's independent judgment." R*awson v. Recovery Innovations, Inc.*, 975 F.3d 742, 751, 753 (9th Cir. 2020). "Pervasive intertwinement" exists even if the private party is exercising independent judgment. *West v. Atkins*, 487 U.S. 42, 52, n.10 (1988); *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1454 (10th Cir. 1995) (holding that a "substantial degree of cooperative action" can constitute joint action).

Like the ruling in *Missouri v. Biden*, this Court does not find that the "joint participation" occurred as a result of a conspiracy with social-media companies. However, Kennedy Plaintiffs are still likely to succeed on the merits that these Defendants "jointly participated" in the actions of the private social-media companies by "insinuating" themselves into the social-media companies' private affairs and blurring the line between public and private action. For the same reasons set forth in this Court's ruling in *Missouri v. Biden*, the Kennedy Plaintiffs have shown joint participation or activity here.

### ii.  Irreparable Harm

The second requirement for a Preliminary Injunction is a showing of irreparable injury. Thus, plaintiffs must demonstrate "a substantial threat of irreparable injury" if the injunction is not

issued. *Texas*, 809 F.3d at 150. For injury to be "irreparable," plaintiffs need only show it cannot be undone through monetary remedies. *Burgess v. Fed. Deposit Inc., Corp.*, 871 F.3d 297, 304 (5th Cir. 2017). Deprivation of a procedural right to protect a party's concrete interests is irreparable injury. *Texas*, 933 F.3d at 447.

Kennedy Plaintiffs argue in their memorandum that the First Amendment violations are continuing and/or that future harm is likely to occur. In contrast, Defendants argue that Kennedy Plaintiffs are unable to show imminent irreparable harm because the alleged conduct occurred in the past, is not presently occurring, and is unlikely to occur in the future. Defendants argue Kennedy Plaintiffs rely upon actions that occurred previously and that it cannot be remedied by any prospective injunctive relief. Further, Defendants argue that there is no "imminent harm" because both the COVID-19 pandemic and the elections where the alleged conduct occurred are over.

The Court finds that Kennedy Plaintiffs have demonstrated a likely "injury from the impending action, that the injury is imminent, and that money damages would not fully repair the harm." *Humana, Inc., v. Jackson*, 804 F.2d 1390, 1394 (5th Cir. 1986). To demonstrate irreparable harm at the preliminary injunction stage, plaintiffs must adduce evidence showing that the irreparable injury is likely to occur during the pendency of the litigation. *Justin Indus. Inc.*, v. *Choctaw Secs., L.P.*, 920 F.2d 262, 268 n. 7 (5th Cir. 1990). This the Kennedy Plaintiffs have done.

Defendants argue that the alleged suppression of social-media content occurred in response to the COVID-19 pandemic and attacks on election infrastructure, and, therefore, the alleged conduct is no longer occurring. Defendants point out that the alleged conduct occurred between one to three years ago. Defendants further argue the risk that Kennedy Plaintiffs will sustain

injuries in the future is speculative and depends upon the action of the social-media platforms. As such, the Defendants allege the Kennedy Plaintiffs have not shown imminent harm by any of the Defendants.

The question is whether Kennedy Plaintiffs have alleged a "substantial risk" that a harm may occur, which is likely. The alleged past actions of Defendants show a substantial risk of harm that is likely. Defendants apparently continue to have meetings with social-media companies and other contacts. Although the COVID-19 pandemic is no longer an emergency, it is likely that in the event of any other real or perceived emergency event, the Defendants likely would once again use their power over social-media companies to suppress alternative views. And it is certainly likely that Defendants could use their power over millions of people to suppress alternative views or moderate content they do not agree with in the upcoming 2024 national election. Defendants were not able to state that the "switchboarding" and other election activities of the CISA Defendants and the State Department Defendants would not resume prior to the upcoming 2024 election; in fact, the FBI's Elvis Chan testified post 2020, "we've never stopped." Notably, a draft copy of the DHS's "Quadrennial Homeland Security Review," which outlines the department's strategy and priorities in upcoming years, states that the department plans to target "inaccurate information" on a wide range of topics, including the origins of the COVID-19 pandemic, the efficacy of COVID-19 vaccines, racial justice, the U.S. withdrawal from Afghanistan, and the return of U.S. Support of Ukraine.[46]

The Kennedy Plaintiffs have thus shown a substantial risk of harm that is likely. The Kennedy Plaintiffs demonstrated that not only have the Defendants shown willingness to coerce and/or to give significant encouragement to social-media platforms to suppress free speech with

---

[46] [Doc. No. 45-4, ¶¶ 14-16] 3:22-1213

regard to the COVID-19 pandemic and national elections, but they have also shown a willingness to do it with regard to other issues, such as gas prices,[47] parody speech,[48] calling the President a liar,[49] climate change,[50] gender,[51] and abortion.[52] On June 14, 2022, at an Axios event entitled, "A Conversation on Battling Disinformation", White House National Climate Advisor Gina McCarthy stated, "We have to get together; we have to get better at communicating, and frankly, the tech companies have to stop allowing specific individuals over and over to spread disinformation."[53]

The Kennedy Plaintiffs are likely to suffer irreparable harm. Deprivation of First Amendment rights, even for a short period of time, is sufficient to establish irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Accordingly, this Court finds that the Kennedy Plaintiffs have shown irreparable harm.

### iii. Equitable Factors and Public Interest

Kennedy Plaintiffs satisfied the first two elements to obtain a preliminary injunction. The final two elements they must satisfy are that the threatened harm outweighs any harm that may result to the Federal Defendants and that the injunction will not undermine the public interest. *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1051 (5th Cir. 1997). These two factors overlap considerably. *Texas*, 809 F.3d at 187. In weighing equities, a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The public interest factor requires the court to consider what public interests may be served by granting or denying a

---

[47] [Doc. No. 212-3 at 65–66, ¶ 211] 3:22-1213
[48] [Id. at 58-60, ¶¶ 180–188] 3:22-1213
[49] [Id. at 61, ¶ 190] 3:22-1213
[50] [Id. at 63-64, ¶¶ 200–203] 3:22-1213
[51] [Id. at 64-64, ¶¶ 204–208] 3:22-1213
[52] [Id. at 65, ¶¶ 209–210] 3:22-1213
[53] [Doc. No. 214-15]  3:22-1213

preliminary injunction. *Sierra Club v. U.S. Army Corps of Engineers*, 645 F.3d 978, 997–98 (8th Cir. 2011).

Defendants maintain that their interest in being able to report misinformation and warn social-media companies of foreign actors' misinformation campaigns outweighs the Kennedy Plaintiffs' interest in the right of free speech. This Court disagrees and finds the balance of equities and the public interest strongly favors the issuance of a preliminary injunction. The public interest is served by maintaining the constitutional structure and the First Amendment free speech rights of the Kennedy Plaintiffs. The right of free speech is a fundamental constitutional right that is vital to the freedom of our nation, and the Kennedy Plaintiffs have produced evidence of a massive effort by Defendants, from the White House to federal agencies, to suppress speech based on its content.

Defendants' alleged suppression has likely resulted in millions of free speech violations. The Kennedy Plaintiffs' free speech rights far outweighs the rights of Defendants, and thus, the Kennedy Plaintiffs satisfy the final elements needed to show entitlement to a preliminary injunction.

### iv. Injunction Specificity

The Fifth Circuit modified this Court's original Preliminary Injunction Order in *Missouri v. Biden*. Therefore, this Court will use the Fifth Circuit's modified Order.

### C. Request for Stay

On October 20, 2023, the Supreme Court of the United States stayed the Preliminary Injunction in *Missouri v. Biden* until the Supreme Court "sends down a judgment." This Court has decided to **GRANT** the Kennedy Plaintiffs' Motion for Preliminary Injunction against the same Defendants and on the same grounds as in *Missouri v. Biden*. This Court agrees with Defendants

that the effect of this Preliminary Injunction should also be **STAYED** until the Supreme Court hands down a ruling in *Missouri v. Biden.*

The Supreme Court decision in *Missouri v Biden* will answer many of the issues raised in this case. Therefore, the stay issued in this case will be automatically lifted on the eleventh (11th) day after the ruling in *Missouri v. Biden* is handed down by the Supreme Court.

### D.  Request for Class Certification

The Kennedy Plaintiffs have requested this matter be certified as a class action. No determination is being made on that issue at this time. This ruling only addresses the claims of the Kennedy Plaintiffs, not the prospective class.

## V.    CONCLUSION

For the reasons set forth herein,

**IT IS ORDERED** that the Motion for Preliminary Injunction [Doc. No. 6] filed by the Kennedy Plaintiffs is **GRANTED IN PART AND DENIED IN PART.**

**IT IS FURTHER ORDERED** that the White House Defendants, Surgeon General Defendants, CDC Defendants, FBI Defendants, and CISA Defendants, and their employees and agents, shall take no actions, formal or informal, directly or indirectly, to coerce or significantly encourage social-media companies to remove, delete, suppress or reduce, including through altering their algorithms, posted social-media content containing protected free speech. That includes, but is not limited to, compelling the platforms to act, such as by intimating that some form of punishment will follow a failure to comply with any request, or supervising, directing, or otherwise  meaningfully controlling the social-media companies' decision making process.

**IT IS FURTHER ORDERED** that in light of the stay issued by the Supreme Court of the United States in *Missouri v. Biden*, this order is **STAYED** for ten (10) days after the Supreme Court sends down a ruling in *Missouri v. Biden.*

**IT IS FURTHER ORDERED** that no security is required to be posted by the Kennedy Plaintiffs under Federal Rule of Civil Procedure 65.

**IT IS FURTHER ORDERED** that no evidentiary  hearing is required at this time.

**IT IS FURTHER ORDERED** that the Motion for Preliminary Injunction  [Doc. No. 6] is **DENIED** as to the State Department Defendants, the NIAID Defendants, the U.S. Food and Drug Administration, the U.S. Department of Treasury, the U.S. Election Assistance Commission, and the U.S. Department of Commerce, along with their directors and/or employees.

**MONROE, LOUISIANA**, this 14th day of February 2024.

**TERRY A. DOUGHTY, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**